IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

STEVEN LEE BATCHELDER,

     Petitioner,

vs.

                            Case No. 4:07cv330 spm/WCS

ALBERTO GONZALEZ, Attorney General,
United States of America, and CONDOLEEZA
RICE, Secretary of State, United States of
America,

     Respondents.

## MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

MICHAEL UFFERMAN
Michael Ufferman Law Firm, P.A.
2022-1 Raymond Diehl Road
Tallahassee, Florida 32308
(850) 386-2345/fax (850) 224-2340
FL Bar No. 114227
ufferman@uffermanlaw.com

Counsel for Mr. **BATCHELDER**

Page 1 of 14

### A.    STATEMENT OF THE CASE AND STATEMENT OF THE FACTS.

The Canadian Government has charged the Petitioner with three offenses: (1) abduction of a person under fourteen,[1] (2) unlawful confinement,[2] and (3) invitation to sexual touching.[3] The offenses allegedly occurred on June 21, 2006, in Fort Erie, Ontario, Canada. The facts of the alleged offenses, as set forth in affidavit in support of the complaint, are as follows:

> On June 21, 2006, United States citizen Steven Lee BATCHELDER approached eleven year old Naomi Kumbu as she waited at a school bus stop in Fort Erie, Ontario, Canada. According to Naomi Kumbu, Steven Lee BATCHELDER drove his car to the corner of Waterloo Street and Murray Street, where she was waiting for her bus, and asked her if she needed a ride to school. After she declined, Steven Lee BATCHELDER told her that he was a friend of "John," who Naomi Kumbu knew to be John Makolo, another student at her school. Naomi Kumbu then agreed to enter Steven Lee BATCHELDER's vehicle. According to Naomi Kumbu, after she entered the defendant's vehicle, the defendant told her that she "smelled nice," and asked "Do you mind kissing me on the cheek?" Naomi Kumbu then gave the defendant directions to her school, but the defendant refused to drive in the direction of the school but, rather, drove toward a dead-end street. Naomi Kumbu stated that, at this time, she became extremely fearful for her safety. The defendant then told Naomi Kumbu, "I am gonna take you anywhere I want to go." Naomi Kumbu then attempted to exit the moving vehicle, but the defendant grabbed her arm firmly. Ultimately, Naomi Kumbu was able to unlock the vehicle's door, escape from the grasp of the defendant, and jump out of the moving vehicle. At that time, the defendant fled the area in his vehicle at a high rate of speed.

(Doc 2 - Pgs 1-2).

---

[1] *See* § 281, Criminal Code of Canada.

[2] *See* § 279(2), Criminal Code of Canada.

[3] *See* §152, Criminal Code of Canada.

B.      **STANDARD OF REVIEW**

In *Chang Na-Yuet v. Hueston*, 734 F. Supp. 988, 990 (S.D. Fla. 1990), Judge

Hoeveler succinctly set forth a district court's standard of review when reviewing a

magistrate judge's order of extradition:

> On Petition for writ of habeas corpus, the scope of this Court's review of the
> Magistrate's extradition order is strictly limited to a determination of whether
> the magistrate had jurisdiction, whether the offense charged is within the
> extradition treaty and, by a somewhat liberal extension, whether there was
> any evidence warranting the finding that there was reasonable ground to
> believe the accused guilty.  In conducting this review, findings of fact are
> reviewed under a "clearly erroneous" standard, and legal questions are
> reviewed *de novo.*

(Citations omitted.)

C.      **ARGUMENT AND CITATIONS TO AUTHORITY**

1.      **The Government failed to establish dual criminality and/or probable
cause for the invitation to sexual touching alleged offense.**

Dual criminality is a specific requirement of the Extradition Treaty in force between

the United States and Canada.  *See* Extradition Treaty, U.S.-Canada, Art. 2, § (1), Dec. 3,

1971,[4] 27 U.S.T. 983.  Hence, in the instant case, the alleged *conduct* must be a crime in both

Canada and the United States (the labels applied to the conduct are not determinative).  A

mirror image analysis must be performed in order to determine whether the conduct would

have been a crime if committed in the United States.  *See Hu Yau-Leung v. Soscia*, 649 F.2d

914, 918 (2d Cir. 1981); *United States v. Poon Sai-Wah*, 270 F. Supp. 2d 748, 750-51

---

[4] The treaty was originally signed on December 3, 1971, but it has been amended
since that date.

(W.D.N.C. 2003); *Republic of France v. Moghadam*, 617 F. Supp. 777, 784-86 (N.D. Cal. 1985).

In order to extradite an individual, the Government, on behalf of the requesting country, must establish that there is probable cause to believe that the individual is guilty of the charges pending against him in the requesting country. *See Moghadam*, 617 F. Supp. at 780-81. The requesting country must introduce evidence on each essential element of each charge. *See In the Petition of France for the Extradition of Sauvage*, 819 F. Supp. 896, 901 (S.D. Cal. 1993).

The Petitioner submits that the Government did not meet its burden of establishing dual criminality for the invitation to sexual touching alleged offense. The invitation to sexual touching that purportedly occurred in this case was the Petitioner's alleged request that Ms. Kumbu kiss him on the cheek. The Government relied upon several statutes to meet the dual criminality requirement for this offense: 18 U.S.C. § 2241 (aggravated sexual abuse), 18 U.S.C. § 2242 (sexual abuse), 18 U.S.C. § 2243(a) (sexual abuse of a minor), 18 U.S.C. § 2244(a) (abusive sexual contact), 18 U.S.C. § 2422 (coercion and enticement), and 18 U.S.C. § 2423(a) (transportation of minors). (Doc 36 - Pg 6). However, 18 U.S.C. § 2246 defines the relevant terms for the statutes relied upon by the Government. In particular, § 2246(3) states:

> the term "sexual contact" means the intentional touching, either directly or through the clothing, of *the genitalia, anus, groin, breast, inner thigh, or buttocks* of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

(Emphasis added). The conduct of merely requesting another individual to give a kiss on the

*cheek* is not proscribed by any of the statutes upon which the Government has relied.[5] Hence, regardless of whether this alleged conduct is criminal in Canada, it is clear that the alleged conduct is not criminal in the United States. Therefore, the Government failed to meet its burden of establishing dual criminality as to this offense.

For all of these same reasons, the Petitioner submits that the Government failed to establish that there is probable cause to believe that the Petitioner committed the purported invitation to sexual touching offense in light of the innocuous factual allegations regarding this claimed offense. Simply requesting another person to provide a kiss on the cheek is not probable cause of a crime (in either the United States or Canada).

In the extradition order, the Magistrate Judge acknowledged that "[m]erely kissing on the cheek is not 'sexual contact' as defined by 18 U.S.C. § 2246(3)." (Doc 42 - Pg 8). However, the Magistrate Judge speculated that further improper conduct would have occurred, and therefore the Magistrate Judge concluded that the Petitioner's actions amounted to an attempted sexual battery:

[T]he actions alleged here constitute an attempt to violate section 2244.

---

[5] The Government also relied upon the Florida lewd and lascivious statute, section 800.04, Florida Statutes. (Doc 36 - Pg 7). However, section 800.04 also defines conduct that amounts to unlawful sexual activity:

"Sexual activity" means the *oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object*; however, sexual activity does not include an act done for a bona fide medical purpose.

§ 800.04(1)(a), Fla. Stat. (emphasis added). The alleged conduct in the instant case is not proscribed by section 800.04.

There does not appear to be a general federal general statute creating the offense of an attempt. Attempts are often added to the particular offense. *E.g.*, 18 U.S.C. § 1201 (kidnapping); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1344 (bank fraud); 18 U.S.C. § 1513 (retaliation against a witness, victim, informant).

Section 2244 does not specifically prohibit an attempt to commit the offense of abusive sexual contact. Section 2244 prohibits "sexual contact" if it would violate section 2243 "had the sexual contact been a sexual act." 18 U.S.C. § 2244(a)(4). Section 2243 punishes attempts. Elsewhere in federal criminal law it is assumed that 18 U.S.C. § 2244 may be violated by an attempt. *E.g.*, 18 U.S.C. § 3559(c)(2)(F), defining a "serious violent felony" as including, among other offenses, an attempt to commit a violation of sections 2244(a) and (b). *See also*, USSG, § 2A3.4, 18 U.S.C., entitled "Abusive Sexual Contact or *Attempt* to Commit Abusive Sexual Contact." (Emphasis added.) In the absence of persuasive authority to the contrary, it is concluded that section 2244 may be violated by an attempt.

To prove an attempt to commit a federal criminal offense, there must be proof of "an 'overt act' that constitutes a 'substantial step' toward completing the offense. . . . As was true at common law, the mere intent to violate a federal criminal statute is not punishable as an attempt unless it is also accompanied by significant conduct." *United States v. Resendiz-Ponce*, – U.S. –, 127 S. Ct. 782, 787, 166 L. Ed. 2d 591 (2007).

> "To sustain a conviction for the crime of attempt, the government need only prove (1) that the defendant had the specific intent to engage in the criminal conduct for which he is charged and (2) that he took a substantial step toward commission of the offense." *United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004). A substantial step "must be more than remote preparation," and must be conduct "strongly corroborative of the firmness of the defendant's criminal intent." *United States v. Mandujano*, 499 F.2d 370, 377 (5th Cir. 1974).

*United States v. Ballinger*, 395 F.3d 1218, 1238 n.8 (11th Cir.), *cert. denied*, 126 S. Ct. 368 (2005).

There is competent evidence that Defendant *intended to engage in more than kissing and hugging with the child*, and took several substantial steps toward the commission of the offense of abusive sexual contact. Christopher Lemaich states in his affidavit that on June 21, 2006, Defendant asked the Naomie Kumbu, a child age 12 years old, if she needed a ride to school. Government's Exhibit 3, ex. 1, ¶¶ 11 and 12; doc. 15-3, ¶ 12. She

declined but got into the vehicle after Defendant told her he was "John's friend." *Id.* After she sat in the passenger seat, Defendant said she smelled really nice and asked for a kiss on the cheek. *Id.*, ¶ 13. The child noticed that Defendant was not driving toward school and commented on this. *Id.* Defendant responded by accelerating the motor vehicle and said: "I'll take you wherever I want." *Id.* The child saw that the vehicle was on a dead end road. *Id.* She tried to open the door but it was locked. *Id.*, ¶ 14. Defendant then grabbed her wrist and "held on very tight." *Id.* She opened the door with her right hand and jumped from the moving vehicle to the pavement. *Id.* The child was treated at a hospital for scrapes to her arms and inside her wrists consistent with striking a roadway "at some speed." *Id.*, ¶ 9. Defendant was born on January 1, 1983, and was then 23 years old. *Id.*, ¶ 22.

Therefore, the actions of Defendant described in the affidavit of Christopher Lemaich are sufficient to satisfy the dual criminality provision of the Treaty with respect to the third Canadian offense, as an attempted violation of 18 U.S.C. § 2244.

(Doc 42 – Pgs 8-10) (emphasis added).

Contrary to the Magistrate Judge's conclusion, the alleged actions of the Petitioner do not establish probable cause to believe that the Petitioner "intended to engage in more than kissing and hugging with the child." The Magistrate Judge acknowledged that a kiss on the cheek does not amount to illegal "sexual contact" under the laws of this country, yet the Magistrate Judge *speculates* that the Petitioner *would have* taken further actions that *would have* resulted in sexual contact.[6] "The probable cause standard cannot be satisfied by relying upon suspicion, reasonable or not, or mere speculation." *United States v.*

---

[6] In a previous order, the Magistrate Judge stated that "[e]xtended kissing, had that occurred, would probably have resulted in touching of the victim's breast if only during an embrace." (Doc 40 - Pg 5). There is absolutely no evidence in the record that the Petitioner sought "extended kissing." Moreover, there is no basis for the Magistrate Judge's assumption that "extended kissing" would "probably have resulted in touching of the alleged victim's breast."

*$242,484.00*, 389 F.3d 1149, 1178-79 (11th Cir. 2004).[7]  Accordingly, the Magistrate Judge

erred by finding that the dual criminality requirement was met for the invitation to sexual

touching alleged offense and/or the Magistrate Judge erred by finding that there was probable

cause to believe that this offense was committed.  The Magistrate Judge's mere speculation

as to what might have happened is insufficient to establish that a crime occurred.

**2.      Double jeopardy violation in regards to the dual criminality requirement of the first two crimes for which the Government sought extradition (abduction of a person under fourteen years of age and unlawful confinement).**

As explained in claim 1, the dual criminality requirement of the Extradition Treaty

in force between the United States and Canada requires the Government to prove that the

alleged conduct is a crime in both Canada and the United States.  In the instant case, Canada

is seeking extradition for an alleged abduction of a person under fourteen years of age and

an alleged unlawful confinement.  These two purported offenses involve the same alleged

victim and took place during a single criminal episode.  For both offenses, the Government

relied upon the same federal statute to satisfy the dual criminality requirement (the federal

kidnapping statute, 18 U.S.C. § 1201).[8]  (Doc 36 - Pgs 4-5).  The Double Jeopardy Clause

prohibits the imposition of multiple trials, multiple convictions, and multiple punishments

for the same offense.  *See North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled*

---

[7] Pursuant to the Magistrate Judge's analysis, there would be probable cause to extradite the Petitioner for attempted murder simply because the Magistrate Judge might speculate that the Petitioner would have murdered the alleged victim after the assumed sexual abuse.

[8] The Government also relied upon the Florida kidnapping statute, section 787.01, Florida Statutes.  (Doc 36 - Pg 5).

*on other grounds by Alabama v. Smith*, 490 U.S. 794, 802 (1989). The familiar test utilized by the Supreme Court to determine whether a single criminal episode constitutes a violation of two separate statutes was announced in *Blockburger v. United States*, 284 U.S. 299, 304 (1932):

> where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

In the instant case, there is no need to resort to a *Blockburger* analysis because the Government is relying upon the same statute (18 U.S.C. § 1201) for both offenses in question.[9] Accordingly, the Petitioner submits that he can be extradited on one or the other alleged charges, but not both.

In its extradition order, the Magistrate Judge concluded that "[d]ouble jeopardy has no role at all in an extradition proceeding," citing to *Collins v. Loisel*, 262 U.S. 426, 429 (1923), wherein the Supreme Court held that double jeopardy principles have no application

---

[9] The Canadian abduction statute is more analogous to section 787.025, Florida Statutes, than the federal kidnapping statute. Section 787.025 provides:

> A person 18 years of age or older who intentionally lures or entices, or attempts to lure or entice, a child under the age of 12 into a structure, dwelling, or conveyance for other than a lawful purpose commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

§ 787.025(2)(a), Fla. Stat. However, a violation of section 787.025 is a misdemeanor (punishable by a maximum sentence of one year in jail), and the treaty in question only permits extradition if the alleged offense is punishable by a term of imprisonment exceeding one year (in both jurisdictions). *See* Extradition Treaty, U.S.-Canada, Art. 2, § (1), 27 U.S.T. 983.

unless a defendant has been placed on trial.  (Doc 42 - Pg 10).  The Petitioner submits that
there a circumstances where it is appropriate for a court to refuse to extradite a United States
citizen in light of concerns that a foreign jurisdiction will impose multiple punishments for
conduct that would only be punished one time in this country.[10]  In light of the double
jeopardy concerns in this case, the Petitioner submits that it is appropriate to recommend to
the Secretary of State that extradition in this case be limited with the assurance that the
Petitioner will be prosecuted and punished for one of the two alleged offenses, but not both.
*See In the Matter of the Extradition of Singh*, 123 F.R.D. 127, 127 (D.N.J. 1987); *Demjanjuk
v. Petrovsky*, 776 F.2d 571, 584 (6th Cir. 1985); Restatement (Third) of Foreign Relations,
§ 478, comment d (1987).

**3.  The Magistrate Judge applied an improper probable cause standard at
the extradition hearing.**

As explained in Claim 1, in order to extradite an individual, the Government, on
behalf of the requesting country, must establish that there is probable cause to believe that
the individual is guilty of the charges pending against him in the requesting country.  *See
Moghadam*, 617 F. Supp. at 780-81.  Under most treaties, the extradition magistrate will
apply the federal probable cause standard: whether the evidence is "sufficient to cause a
person of ordinary prudence and caution to conscientiously entertain a reasonable belief of

---

[10] In support of his argument, the Petitioner offers an extreme example.  If a foreign
jurisdiction charged a United States citizen with ten separate offenses arising from a single
criminal episode, and it was clear that under United States law the citizen would only be
subject to one criminal charge if prosecuted in the United States, a court would be compelled
to limit extradition to a single offense.

the accused's guilt." *See, e.g., In the Matter of the Extradition of Atta*, 706 F. Supp. 1032,

1050 (E.D.N.Y. 1989) (quoting *Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973)).

However, the Extradition Treaty in force between the United States and Canada requires the

probable cause determination to be made "according to the laws of the place where the

person sought shall be found . . . ." Extradition Treaty, U.S.-Canada, Art. 10, § (1), Dec. 3,

1971, 27 U.S.T. 983.  In *In the Matter of the Extradition of Schweidenback*, 3 F. Supp. 2d

113, 115 (D. Mass. 1998), the court held that this language (i.e., the language in the

Extradition Treaty in force between the United States and Canada) means that the probable

cause standard is that of the *state* in which the accused has been apprehended: "I find it is the

state standard of probable cause that is the appropriate one to be applied."  Pursuant to

*Schweidenback*, Florida's standard of probable cause applied to the extradition proceedings

in the Petitioner's case. *See also In the Matter of the Extradition of Williams*, 496 F. Supp.

16, 17 (S.D.N.Y. 1979) ("The phrase, 'according to the laws of the place where the person

sought shall be found,' refers to state law, in this case the laws of the State of New York.").

In its extradition order, the Magistrate Judge rejected the holding in *Schweidenback*.  (Doc

42 - Pgs 5-6).

Florida Rule of Criminal Procedure 3.133 outlines the procedures for pretrial

probable cause determinations.  Rule 3.133(a)(3) outlines the standard of proof for a

nonadversary probable cause determination:

> Upon presentation of proof, the judge shall determine whether there is
> probable cause for detaining the arrested person pending further proceedings.
> The defendant need not be present. In determining probable cause to detain
> the defendant, the judge shall apply the standard for issuance of an arrest

> warrant, and the finding may be based on sworn complaint, affidavit, deposition under oath, or, if necessary, on testimony under oath properly recorded.

In contrast, rule 3.133(b) outlines the standard of proof for an adversary probable cause determination. Unlike rule 3.133(a), rule 3.133(b) does not permit the state to rely wholly on a complaint (even if sworn), on another affidavit, or on any other evidence inadmissible at trial. Rule 3.133(b)(3) provides instead that all witnesses shall be examined in the presence of the defendant and may be cross-examined. Rule 3.133(b)(5) provides that the judge shall cause the defendant to be held to answer to the circuit court, only if it appears to the judge "from the evidence" that there is probable cause to believe that the defendant has committed the offense. In *Evans v. Seagraves*, 922 So. 2d 318, 319 (Fla. 1st DCA 2006), the Florida First District Court of Appeal held that "hearsay testimony (not falling within some exception to the rule excluding hearsay) does not, by itself, meet the state's burden at an adversary preliminary hearing under [rule] 3.133(b)."

The Petitioner submits that the extradition hearing in his case was akin to the adversary probable cause determination outlined in rule 3.133(b).[11] Therefore, pursuant to state law, the Government could not meet its "probable cause" burden in the instant case based on hearsay evidence alone. *Cf. Schweidenback*, 3 F. Supp. 2d at 117 ("[T]he laws of Rhode Island are more favorably disposed to the government by allowing the use of hearsay and inadmissible evidence while the laws of the Commonwealth [of Massachusetts] require

---

[11] Notably, rule 3.133(a) would allow the nonadversarial preliminary hearing to be held in the defendant's absence, and clearly the Petitioner had a right to be present at the extradition hearing in the instant case.

the government to present a more formal showing."). Yet, at the Petitioner's extradition hearing, the Magistrate Judge allowed the Government to meet its burden of proof based solely on hearsay testimony – no live witnesses testified at the hearing.

For all of these reasons, and pursuant to *Schweidenback*, the Petitioner submits the Florida probable cause standard (as set forth in rule 3.133(b)) applied to his case. Accordingly, the Magistrate Judge erred by allowing the Government to meet its burden of proof based solely on the presentation of hearsay evidence.

### D.    CONCLUSION

The Petitioner is entitled to relief pursuant to 28 U.S.C. § 2241. It was error to order that the Petitioner be extradited on the invitation to sexual touching alleged offense. Additionally, the Petitioner can be extradited on the abduction of a person under fourteen years of age alleged offense or the unlawful confinement alleged offense, but not both. Finally, the Petitioner is entitled to a new extradition hearing wherein the Magistrate Judge applies the Florida probable cause standard (as set forth in rule 3.133(b)). All other appropriate relief is hereby requested.

Respectfully submitted,

MICHAEL UFFERMAN
Michael Ufferman Law Firm, P.A.
2022-1 Raymond Diehl Road
Tallahassee, Florida 32308
(850) 386-2345/fax (850) 224-2340
FL Bar No. 114227
ufferman@uffermanlaw.com

Counsel for Mr. **BATCHELDER**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of the foregoing instrument has been

furnished to:

>   Assistant United States Attorney Robert O. Davis
>   111 North Adams Street, Suite 400
>   Tallahassee, Florida 32301

by U.S. mail delivery this 30th day of July, 2007;

>   Alberto Gonzalez, Attorney General
>   United States Department of Justice
>   950 Pennsylvania Avenue, NW
>   Washington, DC 20530

by U.S. mail delivery this 30th day of July, 2007;

>   Condoleezza Rice, Secretary of State
>   United States Department of State
>   2201 C Street, NW
>   Washington, D.C. 20520

by U.S. mail delivery this 30th day of July, 2007.

>   MICHAEL UFFERMAN
>   Michael Ufferman Law Firm, P.A.
>   2022-1 Raymond Diehl Road
>   Tallahassee, Florida 32308
>   (850) 386-2345/fax (850) 224-2340
>   FL Bar No. 114227
>   ufferman@uffermanlaw.com

>   Counsel for Mr. **BATCHELDER**

xc:     Steven Lee Batchelder