IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**STEVEN LEE BATCHELDER,**

    Petitioner,

v.                                                 CASE NO. 4:07cv330 SPM/AK

**ALBERTO GONZALES, Attorney
General of the United States, and
CONDOLEEZZA RICE,
Secretary of State,**

    Respondents.
_____/

**GOVERNMENT'S RESPONSE TO PETITION FOR**
**<u>WRIT OF HABEAS CORPUS</u>**

      COMES NOW, Respondents ALBERTO GONZALES, Attorney General of the United States, and CONDOLEEZZA RICE, Secretary of State, and file their Response to Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S. C. § 2241 and state as follows:

The instant case arises out of an extradition matter in which Petitioner was ultimately ordered extradited to Canada. *Matter of the Extradition of Steven Lee Batchelder*, NDFL Case No. 4:06mj136-WCS. Petitioner was provisionally arrested at the request of the Government of Canada pursuant to the Extradition Treaty between the United States and Canada. Docs. 1-4.[1] On February 21, 2007, Canada, the requesting state, submitted a formal request for Batchelder's extradition to the Department of State, together with supporting documents. Doc. 17.

Prior to and after the extradition hearing required under 18 U.S.C. §3184, Petitioner filed several pleadings attacking the validity of the proceedings. Docs. 6, 8, 9, 10, 19, 29, 37. The government responded to these pleadings. Docs. 7, 23, 36, 39, 44. Hearings were held. Docs. 32, 41.

After review of the pleadings and consideration of the matters presented at the hearings, United States Magistrate Judge William Sherrill entered an order of extradition. Doc. 42. Petitioner filed a motion to stay execution of the order (Doc. 43), which was denied by United States District Judge Robert Hinkle. Doc. 45.

Petitioner then filed the instant petition, claiming that extradition is improper because 1) the government failed to establish dual criminality for the alleged offense; 2) violation of Double Jeopardy; and 3) an improper probable cause standard was applied at the extradition hearing. For the reasons stated below, the instant petition should be denied.

## STANDARD OF REVIEW

Once a magistrate or judge has certified a fugitive as extraditable, the fugitive can only challenge that decision by petitioning for a writ of *habeas corpus. Joseph v. Hoover*, 254

---

[1] Unless otherwise noted, citations are to the record in Case No. 4:06mj136-WCS.

F.Supp.2d 595, 598 (D.V.I. 2003); *Shapiro v. Ferrandina*, 478 F.2d 894, 901 (2nd Cir. 1973).  On *habeas*, the district court's review is limited to the following issues: 1) whether the magistrate had jurisdiction; 2) whether the offense charged is within the treaty and; 3) whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.  *Yapp v. Reno*, 26 F.3d 1562, 1565 (11th Cir. 1994), *citing Martin v. Warden, Atlanta Pen.*, 993 F.2d 824, 828 (11th Cir. 1993) *and Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 542 (1925); *see also*, *Cornejo-Barreto v. Seifert*, 218 F.3d 1004, 1009-10 (9th Cir. 2000).

"Habeas corpus is not a writ of error, and it is not a means of rehearing what the certification judge or magistrate already has decided."  *Ahmad v. Wigen*, 910 F.2d 1063, 1066 (2nd Cir. 1990), *citing Fernandez*, 268 U.S. at 312, 45 S.Ct. at 542.

Petitioner does not challenge the jurisdiction of the magistrate, thus, only issues 2) and 3) will be addressed here.

In addition, it should noted that extradition treaties must be liberally construed to effect their purpose, namely, the surrender of fugitives for trial for their alleged offenses.  *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 10 (1936); *Factor v. Laubenheimer*, 290 U.S. 276, 293 (1933).  In discussing the application of this rule, the court in *McElvy v. Civiletti*, 523 F. Supp. 42 (S.D. Fla. 1981), noted that:

> [a] narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements. Considerations which should govern the diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intentions of the parties to secure equality and reciprocity between them. [citations omitted].

*Id.* at 47; *see also United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1360 (S.D. Fla. 1999).

3

In order to carry out a treaty obligation the treaty "should be construed more liberally than a criminal statute or the technical requirements of criminal procedure," *Factor*, 290 U.S. at 298; *In re Chan Kam-Shu*, 477 F.2d 333, 338 n.9 (5th Cir. 1973).  This country does not expect foreign governments to be versed in our criminal laws and procedures.  *Grin v. Shine*, 187 U.S. 181, 184 (1902).  Thus, "[f]orm is not to be insisted upon beyond the requirements of safety and justice."  *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925).  This approach is mandated by the liberal rules of construction that are to be used in interpreting extradition agreements.

**DUAL CRIMINALITY WAS ESTABLISHED**

*1) The Crimes for Which Canada Seeks  Extradition Are Covered by the Treaty*

Article 2 of the Canada - U.S. Extradition Treaty provides for "dual criminality."

> (1) Extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment . . ."

*Treaty on Extradition Between the United States of American and Canada*, December 3, 1971, Art. 2,  TIAS 8237 (hereinafter "Canada-U.S. Treaty").  In determining whether a crime charged is punishable by both countries, this Court should examine the facts and decide whether the fugitive's conduct would have been criminal under our law.  The Supreme Court in *Collins v. Loisel*, 259 U.S. 309 (1922) stated that:

> The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of liability shall be coextensive, or, in other respects, the same in the two countries.  It is enough if the *particular act* charged is criminal in both jurisdictions.

259 U.S. at 312 (emphasis added). Concerning the issue of dual criminality, this Court should "approach challenges to extradition with a view towards finding the offense within the treaty." *McElvy  v. Civiletti*, 523 F. Supp. 42, 48 (S.D. Fla. 1981).

4

In comparing the foreign offense with United States law to decide the question of dual criminality, the magistrate may consider federal law, the law of the state in which the hearing is held, and the law of a preponderance of the states. *Cucuzzella v. Keliikoa*, 638 F.2d 105, 107 (9th Cir. 1981). In *Cucuzzella*, the Ninth Circuit interpreted this language from Article 2 of the Canada - U.S. treaty, and concluded that, contrary to petitioner's argument that "laws" refers to state law, the "Contracting Parties" are the United States and Canada. 638 F.2d at 107. The Court concluded, therefore, that it should "therefore look to proscription by similar criminal provisions of federal law, or if none, the law of the place where the fugitive is found, or, if none, the law of the preponderance of states." *Id.*

In reaching this conclusion, the Ninth Circuit noted that its conclusion was consistent with the case of *Pettit v. Walshe*, 194 U.S. 205 (1904), where the Supreme Court consulted state law because the treaty at issue demanded reference to the law of the place where the fugitive was found. The Ninth Circuit noted that the Supreme Court did so in *Pettit* because there were no common-law crimes of the United States. 628 F.2d at 107, n.3. The Ninth Circuit further observed that "federal criminal law is no longer nonexistent and state law no longer non uniform." *Id.* Moreover, the Ninth Circuit concluded that its analysis was only to ensure as an initial matter that the offense charged was "criminal in both jurisdictions" citing *Collins v. Loisel*, *supra*.

Similarly, in the case at hand, the charges alleged by the Government of Canada are "criminal in both jurisdictions." The three Canadian charges against Mr. Batchelder are (1) abduction of a person under 14, (2) unlawful confinement, and (3) invitation to sexual touching. As discussed below, these charges are offenses that are criminal both in Canada and this

jurisdiction.

     *a) Abduction of a Person under Fourteen*

Filed together with the request for extradition, the Government of Canada provided the affidavit of Greg Skerkowski, Crown Counsel employed at the Crown Law Office, Criminal, Ministry of the Attorney General for the Province of Ontario. In his affidavit, Crown Counsel states that Section 281 of the *Criminal Code of Canada* defines the offence of Abduction of a Person under 14 as follows:

> 281. Every one who, not being the parent, guardian or person having the lawful care or charge of a person under the age of fourteen years, unlawfully takes, entices away, conceals, detains, receives or harbours that person with intent to deprive a parent or guardian, or any other person who has the lawful care of charge of that person, of the possession of that person is guilty of an indictable offence and liable to imprisonment for a term not exceeding ten years.

Doc 17, Skerkowski Affidavit at ¶ 15. Crown Counsel states that this provision of law was in full force and effect prior to the date that Mr. Batchelder allegedly committed the offense. *Id.* at ¶ 20. Finally, Crown Counsel states in his affidavit that he has reviewed the Information filed in this case, and the affidavit of Detective Lemaich, and that, in his opinion, the evidence presented therein establishes a *prima facie* case upon which a reasonable jury could convict. *Id.* at ¶ 21.

Similarly, the offense described in the Canadian extradition request and attached documents would constitute crimes under the federal kidnaping statute, 18 U.S.C. § 1201. That statute makes it a crime to kidnap anyone, and has a special rule for offenses involving children. 18 U.S.C. § 1201(g). The elements required to prove an offense under this statute include:

    First:        That the defendant knowingly and willfully kidnaped, seized, confined, inveigled, decoyed, abducted, or carried away, the person described in the indictment, as charged, and

      Second:      That the defendant held such person for ransom or reward or other benefit which the Defendant intended to derive from the kidnaping.

Eleventh Circuit Pattern Jury Instruction 49. The third element of the federal offense, transportation in interstate commerce, is a jurisdictional requirement unique to federal crimes, and does not affect the determination of dual criminality. *See* Canada-U.S. Treaty, Art. 2 (2) ("An offense is extraditable notwithstanding (I) that conduct such as interstate transportation . . . required for purposes of establishing jurisdiction, forms part of the offense in the United States . . .."); *accord, DeSilva v. DiLeonardi*, 125 F.3d 1110, 1114-15 (7th Cir. 1997)(attempt to remove wife from care of family in Canada met requirements for federal kidnaping offense). This federal kidnaping statute was in effect at the time of the events alleged in the Canadian request. *See id.* [2]

    *b) Unlawful Confinement*

In his affidavit, Crown Counsel also states that Section 279(2) of the *Criminal Code of Canada* defines the offence of Unlawful Confinement as follows:

---

[2] Based on this analysis, and supporting case law - - that the Canadian kidnapping offense is criminal under federal law - - there is no need to resort to state law. However, should this Court consider state law, the offense described in the Canadian extradition request would also be criminal under the laws of the State of Florida. Florida Statute Annotated § 787.01 provides:
> (1)(a) The term "kidnapping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to:
>     1. Hold for ransom or reward or as a shield or hostage,
>     2. Commit or facilitate the commission of any felony,
>     3. Inflict bodily harm upon or to terrorize the victim of another person . . .

F.S.A. §787.01. This statute was effective October 1, 2000, and thus was in effect at the time of the events alleged in the Canadian extradition request.

> 279(2). Every one who, without lawful authority, confines, imprisons or forcibly seizes another person is guilty of:
>
> > (a) an indictable offence and liable to imprisonment for a term not exceeding ten years; or
> > (b) an offence punishable on summary conviction and liable to imprisonment for a term not exceeding eighteen months.

Doc. 17, Skerkowski Affidavit at ¶ 16. Crown Counsel states that this provision of law was in full force and effect prior to the date that Petitioner allegedly committed the offense. *Id*. at ¶ 20. Finally, Crown Counsel states in his affidavit that he has reviewed the Information filed in this case, and the affidavit of Detective Lemaich, and that, in his opinion, the evidence presented therein establishes a *prima facie* case upon which a reasonable jury could convict. *Id.* at ¶ 21.[3]

c) *Invitation to Sexual Touching*

In his affidavit, Crown Counsel states that section 152 of the *Criminal Code of Canada*, defines the offense of Invitation to Sexual Touching as:

> 152. Every person who, for a sexual purpose, invites, counsels or incites a person under the age of fourteen years to touch, directly or indirectly, with a part of the body or with any object, the body of any person, including the body of the person who so invites, counsels or incites and the body of the person under the age of fourteen years,
>
> > (a) is guilty of an indictable offence and liable to imprisonment for a term not exceeding ten years and to a minimum punishment of imprisonment for a term of forty-five days; or
> > (b) is guilty of an offence punishable on a summary conviction and liable to imprisonment for a term not exceeding eighteen months and to a minimum punishment of imprisonment for a term of fourteen days.

Doc. 17, Skerkowski Affidavit at ¶ 18. Crown Counsel states that this provision of law was in

---

[3] As discussed above, the offense described in the Canadian extradition request and attached documents would constitute crimes under the federal and Florida kidnapping statutes, discussed above. As such, the second offense charged in the Canadian extradition request is a crime in both jurisdictions.

full force and effect prior to the date that Petitioner allegedly committed the offense. *Id.* at ¶ 20. Finally, Crown Counsel states in his affidavit that he has reviewed the Information filed in this case, and the affidavit of Detective Lemaich, and that, in his opinion, the evidence presented therein establishes a *prima facie* case upon which a reasonable jury could convict. *Id*. at ¶ 21.

The offense described in the Canadian extradition request and attached documents would constitute a crime under several federal statutes involving sexual abuse, 18 U.S.C. § 2241 (Aggravated Sexual Abuse), § 2242 (Sexual Abuse), § 2243(a) (Sexual Abuse of a Minor), § 2244(a) (Abusive Sexual Contact), § 2422 (Coercion and Enticement), and § 2423(a) (Transportation of Minors). These federal crimes cover a broad range of illicit sexual contact, including contact with minors, as well as attempts. By way of example, the elements of a crime under § 2422 include:

| | | |
|---|---|---|
| First: | | That the defendant knowingly [ . . . ] attempted to persuade, induce, entice, or coerce an individual under the age of 18 to engage in sexual activity, as charged, |
| Second: | | That the defendant believed that such individual was less than eighteen (18) years of age; |
| Third: | | That if the sexual activity had occurred, the defendant could have been charged with a criminal offense under the laws of [a state] |
| Fourth: | | that the defendant acted knowingly and willfully. |

Eleventh Circuit Pattern Jury Instruction 80. These elements, again modified to remove the interstate commerce requirement, describe substantially the offense alleged in the third Canadian

charge, Invitation to Sexual Touching, and thus the offense is a crime in both jurisdictions.[4]

The above cases and statutes conclusively demonstrate dual criminality. Petitioner does not make a plausible challenge to dual criminality, but instead focuses on whether there was probable cause to believe that the acts he is charged with constitute a crime in either Canada or the United States. Those arguments will be dealt with below.

## **PROBABLE CAUSE WAS ESTABLISHED**

The standard of proof in extradition proceedings is that of probable cause as defined in federal law. *Sindona v. Grant*, 619 F.2d 167, 175 (2nd Cir. 1980); *United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1361 (S.D. Fla. 1999). This means evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt of the accused. *Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973). The Supreme Court stated in *Collins v. Loisel, supra*, that "[t]he function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether evidence is sufficient to justify a conviction." 259 U.S. at 316. The Fourth Circuit explained the court's function in an extradition proceeding in the following terms:

> The extradition hearing is not designed as a full trial. The purpose is to inquire into the presence of probable cause to believe that there has been a violation of one or more of the criminal laws of the extraditing country, that the alleged conduct, if committed in the

---

[4] Similarly, Florida law makes similar conduct a crime. *See* F.S.A. § 800.04 "Lewd or lascivious offense committed upon or in the presence of persons less than 16 years of age". In particular, subsection (6)(a)2. of that statute makes clear that any one who "solicits a person under 16 years of age to commit a lewd or lascivious act commits lewd or lascivious conduct." This statute further provides that an individual over 18 who commits lewd or lascivious conduct commits a felony of the second degree. F.S.A. § 800.04(6)(c). Finally, as to Florida offenses, Florida law makes clear that attempts to commit a prohibited offense is a "criminal attempt", which is punishable as a crime one level below the crimes ranking. Thus, an attempt to commit lewd and lascivious conduct would be a third degree felony. F.S.A. 777.04

> United States, would have been a violation of our criminal law, and that the extradited individual is the one sought by the foreign nation for trial on the charge of violation of its criminal laws.

*Peroff v. Hylton*, 542 F.2d 1247, 1249 (4th Cir. 1976.) *See also, Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *United States ex rel. Sakaguchi v. Kaulukukui*, 520 F.2d 726, 730-31 (9th Cir. 1975) (magistrate's function is to determine whether there is "any" evidence establishing reasonable or probable cause); *Jimenez v. Aristeguieta*, 311 F.2d 547, 562 (5th Cir. 1962) (magistrate should not require evidence to convince himself that the defendant was guilty, but only that it furnished good reason to believe that the crime alleged had been committed by the person charged with having committed it); *Merino v. United States Marshal*, 326 F.2d 5, 11 (9th Cir. 1963), *cert. denied*, 377 U.S. 977 (1964)(magistrate should determine whether there was "any" evidence to believe the accused was guilty); *In re Ryan*, 360 F. Supp. 270, 273 (E.D.N.Y.), *aff'd*, 478 F.2d 1397 (2nd Cir. 1973)("any" evidence).

Petitioner argues that the magistrate used the improper standard in making a determination of probable cause (Docs. 40, p. 7-8 & 42, p. 5-6), claiming that Petitioner should have been afforded an evidentiary hearing and the opportunity to present live witnesses. Petition, p. 13.  Petitioner's argument must fail for several reasons.

### *1) The Magistrate Properly Used Federal Law to Determine Probable Cause*

Article 8 of the Canada-U.S. Treaty provides: "The determination that extradition should or should not be granted shall be made in accordance with the law of the Requested State . . . ." and Article 10 provides:

> Extradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found, either to justify his committal for trial or to prove that he is the identical person convicted by the Courts of the Requesting State.

11

In interpreting Article 10, the Eleventh Circuit has concluded that the federal probable cause standard used in preliminary proceedings should apply. *See United States v. Cardoso*, 2005 WL 1228826, *8 (M.D. Fla. 2005)("probable cause is measured by the federal standard used in preliminary proceedings"); *Castro Bobadilla v. Reno*, 826 F. Supp 1428, 1433 (S.D. Fla. 1993), *aff'd*, 28 F.3d 116 (11th Cir. 1994)("In extradition proceedings, probable cause is measured by the federal standard used in preliminary proceedings.")(*citing cases*).

### 2)     *Cases Cited by Petitioner are Wrongly Decided*

Petitioner argues that *Matter of Extradition of Schweidenback*, 3 F. Supp.2d 113 (D. Mass. 1998) and *Matter of the Extradition of Williams*, 496 F.Supp.16 (S.D.N.Y. 1979) justify the application of state law in determining probable cause. Petition, p. 11. However, both cases are contrary to the law of this Circuit and were wrongly decided.

The Courts in *Schweidenback* and in *Williams* relied on the Second Circuit's decision in *Shapiro v. Ferrandina*, 478 F.2d 894 (2nd Cir. 1973) to reach its conclusion that the common treaty language  - - "extradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found" - - meant the laws of the State of New York. But closer analysis of *Shapiro* makes clear that the Second Circuit was referring only to the substantive, and not the procedural law, of the state. Interpreting the Israeli-U.S. extradition treaty, with similar language to the treaty in this matter, the Second Circuit stated in Shapiro that "[a]s both parties recognize, the 'laws of the place where the person sought shall be found' refers to the laws of the state where the arrest occurs rather than to the laws of the United States."  *Shapiro,* 478 F.2d at 901.  In a footnote to this statement, the *Shapiro* Court stated that this result was explained by the Supreme Court in *Pettit v. Walshe*, 194 U.S. 205

12

(1904) :

> But as there are no common-law crimes of the United States, and as the crime of murder, as such, is not known to the national government, except in places over which it may exercise exclusive jurisdiction, the better construction of the treaty is that the required evidence as to criminality of the charge against the accused must be such as would authorize his apprehension and commitment for trial in the state of the Union in which he is arrested.

*Shapiro*, 478 F.2d at 901, n.4. Thus, Court in *Shapiro* was explaining that the treaty meant to include the state's substantive criminal law . . . not the procedural law[5]. This is evident by the actions the *Shapiro* Court took after concluding that state law applied: faced with an argument by Shapiro that New York's recently enacted criminal procedural law required the introduction of non-hearsay evidence to support extradition, the Court rejected that argument, stating that "it runs afoul of *Collins v. Loisel, supra*, . . . as well as . . . good sense." *Id.* at 902 (citation omitted). The *Shapiro* Court concluded that "[i]n extradition hearings . . . this is precisely the sort of issue to be determined by national law rather than by state law." *Id.*

### 3) Application of State Law Would Subvert Federal Extradition Law

Petitioner seeks to use the Florida Rules of Criminal Procedure to prevent the use of hearsay and other evidence which would be inadmissible at trial. Petition, p. 12. However, it is well established that state law does not control the introduction of evidence at federal proceedings. *Emami v. United States District Court*, 834 F.2d 1444, 1450 n.6 (9th Cir. 1987). It is equally well settled that the Federal Rules of Criminal Procedure and the Federal Rules of Evidence are expressly inapplicable to extradition proceedings. Fed.R.Crim.P. 1(a)(5);

---

[5]As noted earlier, the Ninth Circuit has recognized that the premise underlying the *Pettit* decision is no longer valid. *See Cucuzzella v. Keliikoa*, 638 F.2d 105, 107 (9th Cir. 1981)("federal criminal law is no longer nonexistent and state law no longer non uniform").

Fed.R.Evid. 1101(d)(3). Thus, hearsay and otherwise excludable evidence is admissible. *United States v. Peterka*, 307 F.Supp.2d 1344, 1349 (M.D.Fla.2003).

### 4) There Is Ample Evidence to Believe Petitioner Guilty

At an extradition hearing:

> The accused is not entitled to introduce evidence which merely goes to his defense but he may offer limited evidence to explain elements in the case against him, since the extradition proceeding is not a trial of the guilt or innocence but of the character of a preliminary examination held before a committing magistrate to determine whether the accused shall be held for trial in another tribunal.

*Jimenez v. Aristeguieta*, 311 F.2d 547, 556 (5th Cir. 1962), *cert. denied*, 373 U.S. 914 (1963). A defendant may not present evidence that contradicts the evidence presented by the Government, but may present only explanatory evidence. *Matter of Demjanjuk*, 603 F.Supp. 1463, 1464-1465 (N.D. Ohio 1984); *United States v. Fernandez-Morris*, 99 F.Supp.2d 1358, 1366 (S.D. Fl. 1999). Explanatory evidence is evidence rebutting probable cause, not evidence in defense. *Demjanjuk*, 603 F.Supp. at 1464. "The magistrate does not weigh conflicting evidence and make factual determinations but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense." *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986), *cert. denied*, 479 U.S. 882 (1986); *Austin v. Healey*, 5 F.3d 598, 605 (2nd Cir. 1993), *cert. denied*, 510 U.S. 1165 (1994) (quoting *Quinn*).

Petitioner was afforded the opportunity to present explanatory evidence at the hearing. Doc. 30, p. 7.

Petitioner claims frames his conduct as a mere "kiss on the cheek" of a an adolescent. Petitioner, p. 4-5. However, as noted by the magistrate in his order, the evidence went far

14

beyond a simple kiss: 1) Petitioner asked Naomie Kumbu, a child age 12 years old, if she needed a ride to school. Doc. 43, Government's Exhibit 3, ex. 1, ¶¶ 11 and 12; Doc. 15, Exhibit 3, ¶ 12; 2) Petitioner lied to the child after she declined to get into the vehicle. *Id.*; 3) after she got in the car, Petitioner, after having spoken to the child for only a few minutes, told the child she said she smelled really nice and asked for a kiss on the cheek. *Id.*, ¶ 13; 4) in spite of stating an intention to drive the child to school, the child noticed that Petitioner was not driving toward school and commented on this. *Id.*; 5) Petitioner then accelerated the motor vehicle and said: "I'll take you wherever I want. *Id.*; 6) the child saw that the vehicle was on a dead end road and tried to open the door but it was locked. *Id.*, ¶ 13-14; 7) Petitioner then grabbed the child's wrist and "held on very tight." *Id.*; 8) the child was so panicked, she opened the door with her right hand and jumped from the moving vehicle to the pavement. *Id.*; 9) adding proof to the child's claims, the child was treated at a hospital for scrapes to her arms and inside her wrists consistent with striking a roadway "at some speed." *Id.*, ¶ 9; and 10) Petitioner was born on January 1, 1983, and was then 23 years old. *Id.*, ¶ 22.

While Petitioner may have a valid defense to the above allegations, it is inconceivable how he can claim the above allegations do not fulfill the "any evidence" criteria of *Yapp v. Reno*, 26 F.3d 1562, 1565 (11th Cir. 1994). The magistrate was well within the bounds of the law in finding probable cause that Petitioner had committed the offenses of (1) abduction of a person under 14; (2) unlawful confinement; and (3) invitation to sexual touching.

## **DOUBLE JEOPARDY NOT IMPLICATED**

Petitioner also argues that if he is extradited, his prosecution on the abduction of a person under 14 and unlawful confinement charges would violate the Double Jeopardy Clause of the

United States Constitution. Petition, p. 8-10. However, whether a fugitive will be afforded the same protections after extradition as a defendant on trial in the United States is not a an issue which should be considered by the certifying judicial official. *Ahmad v. Wigen*, 910 F.2d 1063, 1066 (2nd Cir. 1990)("consideration of the procedures that will or may occur in the requesting country is not within the purview of a habeas corpus judge" -possibility of unfair trial and other human rights abuses not relevant), *citing Sindona v. Grant*, 619 F.2d 167, 174-75 (2nd Cir. 1980) (possibility of assassination not proper subject of inquiry); *Jhirad v. Ferrandina*, 536 F.2d 478, 484-85 (2nd Cir.), *cert. denied,* 429 U.S. 833 (1976)("It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation."); *Garcia-Guillern v. United States*, 450 F.2d 1189, 1192 (5th Cir. 1971), *cert. denied*, 405 U.S. 989 (1972)(possibility of being tried for crimes not specified in extradition request not relevant); *In Re Tang Yee-Chun*, 674 F. Supp. 1058, 1068-69 (S.D.N.Y. 1987)(possibility of death penalty not relevant). Considering the same issue in a slightly different context, the Court of Appeals for the District of Columbia Circuit said:

> What we learn from *Neely* [*Neely v. Henkel*, 180 U.S. 109 (1901)] is that a surrender of an American citizen required by treaty for purposes of a foreign criminal proceeding is unimpaired by an absence in the foreign judicial system of safeguard in all respects equivalent to those constitutionally enjoined upon American trials.

*Holmes v. Laird*, 459 F.2d 1211, 1219 (D.C. Cir.), *cert. denied*, 409 U.S. 869 (1972). *Accord, Pfeifer v. United States Bureau of Prisons*, 468 F. Supp. 920, 924 (S.D. Cal. 1979), *aff'd* 615 F.2d 873 (9th Cir. 1980). Another court disposed of the issue in the following words:

> Regardless of what constitutional protections are given to persons held *for trial* in the courts of the United States or of the constituent states thereof, those protections cannot be claimed by an accused whose trial and conviction have been held or are to be held under the laws of another nation, acting according to its traditional processes and within the scope of its authority and jurisdiction.

*Gallina v. Fraser*, 177 F. Supp. 856, 866 (D. Conn. 1959) (emphasis in original), *aff'd,* 278 F.2d 77 (2nd Cir. 1960).

Thus, the possibility that Petitioner may not be able to assert a Double Jeopardy argument in Canada is not a legally sufficient basis for denying extradition here.

## CONCLUSION

For the reasons stated above, Respondents respectfully request that the judgment of the court in NDFL Case No. 4:06mj136-WCS be affirmed and the instant petition be denied.

Respectfully submitted,

GREGORY R. MILLER
United States Attorney


  s/ E. Bryan Wilson
E. Bryan Wilson III
Assistant United States Attorney
Fla. Bar No. 604501
111 North Adams Street, 4th Floor
Tallahassee, Florida, FL 32301
(850) 942-8430

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Michael Robert Ufferman
Michael Ufferman Law Firm, P.A.
2022-1 Raymond Diehl Road
Tallahassee, Florida 32308.


                                                                                s/ E. Bryan Wilson
                                                          Assistant United States Attorney